Our next case for this morning is Hernandez v. Dart. So we're back on another exhaustion issue. Mr. Morrissey. Good morning and may it please the court. My name is Patrick Morrissey and I'm an attorney for the Plaintiff Appellant Jose Hernandez. In 2012, Mr. Hernandez was seriously injured in a motor vehicle accident. He lost use of his legs. He has very limited use of his arms and he cannot write. In 2013, in March, he was hospitalized at Thorac Hospital and was taken over by the Sheriff of Cook County. Pursuant to the Sheriff's policies, his hand and his leg was restrained to his hospital bed. Now, is this a general policy for all detainees or is it restricted to quadriplegics? At the time, Your Honor, this was applied by Sheriff Dart to every inmate in his custody. Okay. And pursuant to this policy, Mr. Hernandez was also guarded by two armed correctional officers. After a couple of days, Mr. Hernandez was temporarily moved to the jail's hospital and the decision was made that he should be referred out to Strozier Hospital because the jail couldn't care for him. Again, pursuant to the Sheriff's policy, his hand and his leg were restrained to his hospital bed and he was continuously guarded by armed correctional officers. The day after he was admitted to Strozier, the physician made a medical record saying that Mr. Hernandez's condition will never improve if he's shackled to the bed 24 hours a day because he was in there, Your Honor, for pressure wounds, the cubious ulcers. Right. So, he's essentially getting bed sores or what is this? Your Honor, when he was at Thorac Hospital, he was, I'll step back for a minute, he was basically in a nursing home after his accident in 2012 and when he was at Thorac Hospital, he was being treated for pressure sores because he really has limited movement of his body. During that whole course of time, about four or five weeks when he was at Strozier, he was continuously being cared for these pressure wounds and there's medical records that aren't before this court, but the jail refused to take him because they just couldn't provide the level of care that he needed. He needed to be rotated several times a day, I believe it was every two hours. So maybe we can jump to the bottom line. Reading the district court's opinion here, it's hard for me to see whether he's really concerned about a failure to exhaust or whether he's concerned about a failure to state a claim. Because at one point, the district court appears to agree with you, appears to say oral complaints are possible, he made an oral complaint, and then at other aspects, in other places, yeah, it's page, short appendix, page five, the judge says it's a good idea to have a written grievance procedure, but it is, and I don't think this is in dispute, also possible for someone to make a grievance by speaking it out loud and what I saw in this case is that's basically what happened. So I'm just trying to figure out what you think the district court's reason for dismissing this case was. Well, Your Honor, I appreciate the question. The reason we were before the district court in June of 2015 was for a PAVI hearing, only on whether Mr. Hernandez had available procedure to complain about his restraint and also his other issues in his complaint. So the plaintiff had no notice that the district court, if the district court in fact dismissed it based on failure to state a claim, there's no notice or any opportunity for the plaintiff to challenge that issue. The minute entry that amounts to the judgment in this case refers only to failure to exhaust, correct? That's correct, Your Honor. So I guess I'm struggling a little bit, counsel, as well, with just sort of the scope of the appeal. I understand we've got issues about the time that he's shackled to the bed in March and April, but is there, there's an August 3rd, 2013 grievance, is that also an issue in this appeal? That is, Your Honor, because the district court dismissed all of Mr. Hernandez's claims on exhaustion and before the court is only whether Mr. Hernandez is precluded from bringing this suit by the PLRA for exhaustion. And we've got, so we've got the March-April period, we've got the August 3rd grievance, is there anything else? No, Your Honor, that is the only issue before the court. And if I may just touch on the August grievance, Mr. Hernandez, after his release from the hospital, spent most of the time until May of 2014 in the jail's hospital. There were times when he was in the IDOC custody or back at Strozier. And when he was at the jail, he actually learned about the grievance process from other inmates. And with their assistance, they were able to write a grievance for Mr. Hernandez and he was able to appeal based on the jail's inability to properly turn him and move him from his stationary hospital bed to a jerry chair, which is essentially a wheelchair for somebody with a C1 spinal injury that allowed him to move around the jail facility. And so let me approach this from a somewhat different point of view. He makes the oral grievance, as I understand it, about the shackling, right? Then at some point along the way, I've identified a few other grievances that he was making. He seems to be talking about the showers at some point, he seems to be talking about losing feeling in his feet, not being rotated properly, inaccessible housing. Is it your position that he's exhausted on all of those or some, and if not all, which ones yes and which ones no? Your Honor, the issue about the shackling, and we're limited to the first five or six weeks when he was hospitalized initially. Mr. Hernandez was never given the inmate handbook and never orally told about what the procedures are. This court has said in King v. McCarty, that inmates are only required to perform procedures that they're made aware of. And Mr. Hernandez was not made aware of any procedure. There were not any available- All right, so you say the shackling, he's exhausted. I'm just trying to make sure I'm clear on your point. Okay, so what about some of these other things? Losing feelings. And the only other issue that is before the court is whether the sheriff, there's a Monel claim against the sheriff that he was deliberately indifferent to Mr. Hernandez because there were insufficient staff that housed the jail's hospital. And the claim relates to the fact that they could not basically provide basic medical care and as a result he suffered pain because he was lying on his bed or in his jerry chair. And that's the August 3rd, 2013 period, is that right? That's correct, Your Honor. Okay. And in that case, the defendants say this court does not have jurisdiction regarding that claim, but this court has held repeatedly that a minute order terminating or resolving all claims can be sufficient for Rule 58 to give this court jurisdiction. In respect to the issue about Mr. Hernandez's hospitalization, the defendants say that Mr. Hernandez had opportunities to write on a piece of paper with a pen that was provided occasionally by the social worker to grieve. But that forgets the point that Mr. Hernandez was never told by anybody or given a handbook that that was the procedure to do if there were no written grievance forms. And he occasionally had a social worker visit him, but there's no evidence that the social worker ever provided him with any blank grievance form. One of the social workers who testified at trial said in her 24 years of experience, she's never serviced a grievance from a hospitalized detainee and doesn't provide blank grievances unless they're specifically requested by the detainee. So there's- If you would like to save rebuttal time, you're free to do so at this point. In conclusion, we ask that the court reverse the district court's decision to remand. Before you leave, where's Norrick Hospital? Norrick Hospital is on the north side of Chicago. Well, that's a very vague place. One day I was walking in a cab and I drove past it. It's, I think, a little north of Lincoln Park Zoo. Thank you. Thank you. That didn't count against your time. All right, Mr. Cummings. Good morning. Good morning. Assistant State's Attorney Nicholas Cummings on behalf of Sheriff Dart and Cook County, may it please the court. The defendant's position is that the court does not yet have jurisdiction over this case at this time. Now, I don't know why- Firstly, given- Go ahead, go ahead. I don't know why you think that in light of, A, the language in the minute order, B, Federal Rule of Appellate Procedure 4A7 capital A little 2 that says if a district court fails to complete a Rule 58 form, the judgment's considered final anyway after 150 days, and our court's decision saying the real question is, is the district court done with it? And the district court says it's not a particularly bad idea for you to take this upstairs. So I think there's just a lot there that tells us Judge Zagel was finished with this case, he dismissed for the reasons that the minute order says, and here we are. Your Honor, I certainly understand the position, and I would respectfully disagree in light of this court's decision in Properties Unlimited, which was cited by plaintiff in his reply. There are certain indicia that need to be present in the order from the court. And while Judge Zagel may have been done with the case, he dismissed the case without prejudice, and the deliberate indifference claims were not dismissed for failure to exhaust. They were dismissed because Judge Zagel felt that they did not reach the level of a constitutional injury. But he says, case is dismissed without prejudice, civil case terminated, period. And then, as I said, even with, that was the whole reason FRAP 4 was amended, because there were a lot of district judges, so this is not something unique to Judge Zagel, a lot of district judges who just weren't filing the Rule 58 form. And so the rule now has kind of a backup provision for when you can be confident that the case is finished in the district court. Yes, Your Honor. And that language, civil case terminated, actually was also present in a July 16, 2014 order issued by Judge Zagel in this very case. And as you can see, we're here a year later having litigated the exhaustion issue, over a year later litigated the exhaustion issue. So the defense position is that plaintiff had other means to cure the defects in the complaint at the district court level and failed to do so. How's he supposed to turn the clock back and change the way he exhausted? Or another way of asking that question is, is it meaningful in a failure to exhaust case when no more remedies exist under the pertinent law to say without prejudice? Well, Your Honor, this court's decisions in Maddox v. Love and Barnes v. Briley certainly give the district court flexibility to enter some other language. Dismissing it with prejudice. Explaining that- But they don't always. And, and, but the point is, is, and my qualification is important. If there are no other things to be done under the applicable law, we were speaking in the last case about Woodford against No, Supreme Court's decision. Then you can't fix the failure to exhaust. It either existed or it didn't. And that issue is the issue on review with the Court of Appeals. Certainly, Your Honor. And I, I certainly agree with, with what you're saying as far as there were no other available, available remedies for the plaintiff with respect to his restraint claim. The district court in this case in the, in the language of his oral ruling specifically says that the deliberate, there's no deliberate indifference in his other claims. And, and that's the crazy thing about this order. That's why I mentioned this to Mr. Morrissey. It's a very unsatisfactory explanation because normally when you're talking about failure to exhaust, you're looking at things like the inmate handbook, or you're looking at the forms, or you're looking at the Illinois Administrative Code, if it's that kind of case, or whatever. You're looking at how do you work with the grievance system. You don't look at the merits, about whether there's deliberate indifference, about any of these other things. And you just have a hodgepodge in this set of remarks. And I certainly agree with you with that, Your Honor. And that was over my objection, plaintiff. It's not your fault. I really don't, I don't mean to be claiming that, but. Plaintiff at several instances attempted, and even in introducing his case before your court, this court, wants to introduce the merits of this case so badly. However, the rule is that you have to get over the hump of exhaustion. And I think the plaintiff tried to restrict himself to exhaustion, but the judge didn't. But if the judge really dismissed this, not because of exhaustion, but because of merits, it needs to go back for things to be clarified, for everybody to have a proper opportunity to say whatever they have to say about the merits. And defendants would not object to sending it back for that clarification. The defendant's position here is that it should go back mainly because the plaintiff could have cured the defects with respect to the deliberate indifference claim. And not necessarily on the restraint case. Because the- What do you think they should have done on the deliberate indifference claim? Filed a new grievance? No, he could have amended his complaint to actually state a claim. That was Judge Zagel's point, is that the plaintiff being moved from his chair at certain times when he wanted to- So you're conceding that that was exhausted then? I'm not conceding that it was all exhausted. However, he did file at least three grievances in August where he appealed. And at least in respect to the Department of Corrections process, I would not submit that, I would not argue that those were not exhausted. That sounds to me, I don't know what line you're drawing. It sounds to me as though you are conceding that there are exhausted grievances. And yet, the judge terminates the whole case for lack of exhaustion. Yes, Your Honor. The reason why is because the grievances that were presented actually at the Pavy hearing involved issues that Judge Zagel deemed did not rise to a constitutional injury. Okay. So we've got the mix of merits. Why don't you focus on the exhaustion of the shackling claim? Your Honor, plaintiffs want this court to focus in on only the first six weeks that Mr. Hernandez was detained at Stroger Hospital. And that's simply, it shouldn't be, this court shouldn't view it that way. Mr. Hernandez was in custody for over a year, and by his own testimony, was subjected to the policy on multiple occasions. He had an opportunity, specifically in August, he was hospitalized for a week in August with the flu at Stroger Hospital. He filed three grievances in August. He filed another in September. He filed another in December. And at no point did he ever file a grievance with respect to being restrained at Stroger Hospital. Well, okay, he may have given up on that. Who knows? But I thought the focus here was on March and April of 2013. When he's shackled in the hospital, and you all have taken the position that wasn't exhausted, and the district judge agreed with you. Yes, Your Honor. Have I got that right? Yes, Your Honor. Okay. So is there any evidence as to information this plaintiff was provided at that time when he could have filed or somehow created a timely grievance about what the procedures were? There's evidence in the record, Your Honor, that correctional rehabilitation workers visited him two times per week and spoke with him. And what evidence is there about informing him about the grievance procedures? There is no evidence of that, Your Honor, and this court's jurisprudence does not require that the jail inform plaintiffs of the grievance procedures specifically. It doesn't? No, Your Honor. There's nothing that the cases cited by plaintiffs actually are not helpful in. Is King incorrect? King is not incorrect. It's that the difference between King in this case is that the jail took affirmative steps to block the grievance process in that case. Here, that's not the instance. No, King was just transferred. He was transferred and there were procedures that were also changed  It's my understanding of the case, Your Honor. That's incorrect, but if there's no evidence that – Judge Zagel is perfectly correct. The system works much better if everything is done in writing as we – and if people make copies, as we heard in the argument a few minutes ago. But if we've got an inmate who, because of his physical condition, is unable to do that, I don't see how you can hold him to failing to exhaust procedures he doesn't know about. Your Honor, this court's – well, there's two things. This court's previous case in Twitty v. McCoskey specifically said that the lack of awareness procedure does not excuse compliance. Additionally, there was evidence presented at the Pavey hearing that the correctional rehabilitation workers are trained to give someone assistance if they are physically unable to write. And there's also evidence that Mr. Hernandez actually wrote his own grievances in this case. That was later, correct? Yes, it was later. With the help of other inmates, right? He actually – But there's a 15-day limit for filing grievances, right? Yes, Your Honor. Okay, so that was – I don't see how any of that evidence from after May of 2013 has any relevance to his ability to exhaust back in March and April. Well, Your Honor, with respect to – respectfully, I disagree based on this court's own jurisprudence. There's a case, Burton v. Ruzicki, where this court – What was the name of it again? Burton v. Ruzicki. I'm sorry, I mispronounced it the first time. Where this court – the plaintiff claimed he did not have access to writing materials because he was in segregation. But the court found that he had filed five unrelated grievances and that it was sufficient to show that he had – that the grievance policy was available to him. In this instance, the grievance policy was available to Mr. Hernandez. What does that mean, available to him? I see that my time is – Please answer his question. You should always answer a judge's question. Your Honor, Mr. Hernandez, having been detained in the Cook County Jail for at least a year, and the evidence showed in this case that he found out about the grievance system later and made use of it. And my argument – That's later, correct? That is, Your Honor. And my argument to the district court and again to this court is that he was subjected to that policy consistently and at any point in time, just once. Come on, look. Counsel, I'm sorry to be impatient with you about this, but if I understand this sequence of events correctly, he's not arrested, he's not taken into custody until he's in the hospital, correct? In March 9, 2013. Is that right? Mr. – yes, that's correct. Mr. Hernandez is actually – He hasn't been in the jail. He's being shackled. He thinks that's a violation of his constitutional rights. We'll see. But in the period of March through April 2013, while he is shackled to his hospital bed, how has he been – what grievance procedures are available to him and how does he know it? Your Honor, it's not clear whether or not he knows it. There's no evidence that he does and it's your burden of proof, correct? Yes, Your Honor. Okay, thank you. All right, thank you very much, Mr. Cummings. Anything further, Mr. Morrissey? I have nothing further, Your Honor. Thank you. All right, apparently no questions. So thanks to both counsel. We'll take the case under advisory.